NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALLSTATE ASSURANCE COMPANY,

    *Plaintiff,*

v.

JIHAD TAWIL,

    *Defendant,*

v.

MICHAEL TRABUCCO,

    *Third-Party Defendant.*

Civil Action No. 18-8843

OPINION

ARLEO, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court by way of Plaintiff Allstate Assurance Company's ("Plaintiff" or "Allstate") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, ECF No. 66 ("Allstate's Motion"), Defendant Jihad Tawil's ("Tawil" or "Defendant") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, ECF No. 62, ("Tawil's Motion"), and Third Party Defendant Michael Trabucco's ("Trabucco") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, ECF No. 65 ("Trabucco's Motion"). Tawil Opposes Allstate's Motion and Trabucco's Motion, ECF Nos. 68, 69. Allstate and Trabucco Oppose Tawil's Motion, ECF Nos. 70, 73.[1] For the reasons explained below, Allstate's Motion is **GRANTED**, Tawil's Motion is **DENIED**, and Trabucco's Motion is **GRANTED**.

---

[1] Trabucco submits that the Court should also grant Allstate's Motion for Summary Judgment. See ECF No. 71.

## I. FACTUAL BACKGROUND[2]

This matter arises from Allstate's efforts to rescind a $1 million life insurance policy for which Tawil is the beneficiary. <u>See generally</u> Am. Compl, ECF No. 25.

In December 2014, Tawil met Amal Bahjat ("Bahjat") and the two were married less than six months later. Pl. SOMF ¶ 3. Shortly after they were married, Bahjat and Tawil discussed the possibility of opening a smoke shop. <u>Id.</u> ¶ 5. In April 2016, the couple opened Tawil Smoke Shop in Jersey City. <u>Id.</u> ¶¶ 6-7. Bahjat and Tawil worked in the smoke shop with Amin Tawil, Tawil's adult son ("Amin"). <u>Id.</u> ¶ 8.

On September 19, 2016, less than five months after opening Tawil Smoke Shop, Bahjat, Tawil, and Amin met with Trabucco, an insurance producer, to apply for life insurance on Bahjat. <u>Id.</u> ¶ 9. Trabucco sells Allstate's insurance policies pursuant to a "L2000S Exclusive Financial Specialist Independent Contractor Agreement," which explicitly states that Trabucco is an independent contractor. Pl. ASOMF ¶¶ 22-23. Trabucco also sells insurance on behalf of other insurers and has over 37 years of insurance services experience. <u>See Id.</u> ¶¶ 21, 30-31.

That day, Bahjat completed an application with Trabucco for a life insurance policy that would provide $1 million in death benefits. Pl. SOMF ¶ 10. During the meeting, Trabucco filled out the application after reading and discussing the questions with Bahjat. 3d Def. SOMF ¶ 13;

[2] Unless otherwise indicated, the Court draws the following facts from Allstate's Statement of Undisputed Material Facts ("Pl. SOMF"), ECF No. 67, Tawil's Response to Allstate's Statement of Undisputed Material Facts ("Def. Resp. to Pl. SOMF"), ECF No. 68.1, Trabucco's Statement of Undisputed Material Facts ("3d Def. SOMF"), ECF No. 65.1, Tawil's Response to Trabucco's Statement of Undisputed Material Facts ("Def. Resp. to 3d Def. SOMF"), ECF No. 69.1, Tawil's Statement of Undisputed Material Facts ("Def. SOMF"), ECF No. 62, Allstate and Trabucco's Responses thereto ("Pl. Resp. to Def. SOMF" and "3d Def . Resp. to Def. SOMF"), ECF Nos. 73, 70.1, and Allstate's Statements of Additional Undisputed Material Facts ("Pl. ASOMF"), ECF No. 73.1. Disputes of fact are noted.

see also Declaration of Jason P. Gosselini, Ex. E (the "Application"). On the Application, Bahjat identified her husband, Tawil, as the beneficiary. Pl. SOMF ¶ 11.

The application contained a question seeking Bahjat's "annual income." Application at Allstate/Bahjat_000043, ECF No. 67.8. Bahjat and Tawil indicated that they did not know her precise annual income because they had just started the new business. Def. SOMF ¶ 5. Trabucco then asked Bahjat for her "approximate annual income." Def. SOMF ¶ 6; 3d Def. Resp. to Def. SOMF ¶ 6. Bahjat said she was unsure but still provided Trabucco with an approximate figure for her annual income. The precise nature of this conversation is disputed, however deposition testimony from both Tawil and Amin confirms that the family provided information to Trabucco sufficient to answer this question. For example, at the meeting Tawil explained "sometimes we make $500 [a day], sometimes $700 [a day], sometimes $1,000 [a day]." Pl. Ex. H, Transcript of Deposition of Jihad Tawil ("Tawil Tr.") at 31:25-32:23, ECF No. 63.8; see also Pl. Ex. C, Transcript of Deposition of Amin Tawil ("Amin Tr.") at 79:13-80:31, ECF No. 63.3. Based on the information provided, Trabucco recorded on the application Bahjat's annual income as $180,000 (or roughly $500 a day). Def. SOMF ¶ 8.[3] Upon completing the application, Trabucco

---

[3] Trabucco and Tawil dispute the precise version of events around this conversation. Trabucco testified that Bahjat simply provided him $180,000 figure and that they did not discuss daily income estimates. See 3d Def. Ex. B, Transcript of Deposition of Michael Trabucco ("Trabucco Tr.") at 36:10-37:2, ECF No. 65.1. Additionally, Trabucco generally objects to Tawil's characterization of the record "that Trabucco provided advice as he completed the application." 3d Def. Resp. to Def. SOMF ¶ 2. However, Trabucco and Tawil do not dispute that Trabucco based the answers written in the application upon the information and responses provided by Bahjat. Id. For purposes of the instant Opinion, the Court accepts the version of the facts most favorable to Defendant, but the difference between the parties' version of events is immaterial. Critically, there is no dispute that the estimate of $180,000 came from information that was provided to Trabucco at the meeting and Bahjat affirmed its accuracy. See 3d Def. SOMF ¶¶ 15-16; see also Def. Resp. to 3d Def. SOMF ¶¶ 15-16.

reviewed the questions and answers with Bahjat—including her "approximate" income—and asked her to confirm the application's accuracy. 3d Def. SOMF ¶¶ 21-22.[4]

By signing the application, Bahjat certified "that the answers and statements written above are full and correct to the best of my knowledge and belief." Pl. SOMF ¶ 13. Bahjat further certified that she understood and agreed "that the statements above, along with the application, [would] be the basis for any insurance issued." Id. ¶ 14; see also Application at Allstate/Bahjat_000045.

On September 29, 2016, Allstate issued a life insurance policy to Bahjat bearing Policy No. 06T1E42232 and providing a death benefit of $1 million. The policy provided that Allstate "will not use any statements, except those made in the application, to challenge any claim or to void any liability under this policy." Pl. SOMF ¶ 16. The policy further provided that Allstate "will not contest this policy after it has been in force during the lifetime of the insured for two years from its issue date." Id. ¶ 17.

The Tawil Smoke Shop closed later that year. Def. Resp. to Pl. SOMF ¶ 18. In early 2017, Bahjat and Tawil moved to Surprise, Arizona. The couple had previously considered opening another smoke shop in Arizona, but they never did. Id. ¶ 20.

On June 6, 2017, Bahjat was found dead in the home she shared with Tawil in Arizona. Pl. SOMF ¶ 21. The words "Death to the Betrayer" were scrawled in Arabic on the walls of the home. Id. ¶ 22. Her death was ruled a homicide. Id. ¶ 25. The investigation remains open and, to date,

---

[4] In determining an applicant's eligibility for life insurance, Allstate considers both medical and non-medical factors, such as the financial need for the policy. In the absence of a financial needs analysis or estate planning valuation, Allstate determines insurable value as a function of the insured's income. Pl. SOMF ¶¶ 35-38. Upon completing its investigation, discussed infra, Allstate concluded that Bahjat was ineligible for life insurance. Allstate would not have offered insurance to Bahjat had they known the business's true income. Id. ¶¶ 44-45. Tawil does not dispute these facts. See Def. Resp. to Pl. SOMF. .

authorities have not charged anyone in Bahjat's murder.  Id. ¶ 28.  Tawil has not been ruled out as a suspect in the murder.  Id. ¶ 27.

On August 10, 2017, Tawil submitted a claim for $1 million in death benefits under the life insurance policy.  Id. ¶ 29.  Because the policy was within the two-year contestability period, Allstate conducted a routine contestable claim investigation.  Id. ¶ 30.  During its investigation, Allstate learned that Tawil Smoke Shop did not even come close to earning $180,000 annually.  Rather, in 2016, Tawil's Smoke Shop's gross profit was $1,928.  Pl. SOMF ¶ 33.  After further subtracting expenses, the business generated a net loss of $17,211 in 2016.  Id. ¶ 34.

## II. PROCEDURAL HISTORY

On December 11, 2018, Allstate filed an amended complaint seeking declaratory judgment against Tawil on two counts.  Am. Compl., ECF No. 25.  Specifically, the first count seeks declaratory judgment against Tawil that the life insurance policy is void due to material misrepresentations in the application and that no death benefits are due ("Count I"), and the second count alternatively seeks a declaration that Tawil is not entitled to the death benefits if it is determined that he intentionally killed Bahjat ("Count II").  Id. ¶¶ 31-42.

On January 4, 2019, Tawil answered the amended complaint, filed a third-party complaint against Michael Trabucco, and filed counterclaims against Allstate.  3d Party Compl., ECF No. 30.  Tawil asserted four counterclaims against Allstate: breach of contract ("Counterclaim I"); unjust enrichment ("Counterclaim III"); equitable estoppel ("Counterclaim V");[5] and breach of the

---

[5] Tawil also asserts this equitable estoppel claim against Trabucco.

implied covenant of good faith and fair dealing ("Counterclaim VI").  Id.  Additionally, Tawil asserted a claim of negligence ("Count IV") against Trabucco.[6]

Following the completion of discovery, this motion practice followed.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable to the non-moving party.  Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

### III. ANALYSIS

#### A. Declaratory Judgment

Tawil and Allstate both seek summary judgment on Counts I and II.  Allstate argues that the Court should enter summary judgment in its favor declaring the policy rescindable and void because material misrepresentations were made in the application.  Tawil argues that the Court should enter summary judgment in his favor because Allstate has failed to show that it is entitled

---

[6] Tawil additionally brought a breach of contract claim ("Counterclaim II") against third-party American Automobile Liability Insurance.  This claim was dismissed pursuant to a stipulation.  ECF No. 23.

to rescind the policy as a matter of law.  The Court agrees with Allstate and holds that Allstate is entitled to rescind the policy as void for equitable fraud.

Under New Jersey law, an insurer may rescind a policy for equitable fraud when false statements were made in the application which "materially affected either the acceptance of the risk or the hazard assumed by the insurer."  N.J.S.A. § 17B:24-3(d).  Equitable fraud does not require scienter for objective questions; the only inquiry is whether the misrepresentation is material.  A misrepresentation is material if it "naturally and reasonably influenced the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium."  Ledley v. William Penn Life Ins. Co., 651 A.2d 92, 97 (N.J. 1995); Mass. Mut. Life Ins. Co. v. Manzo, 584 A.2d 190, 195 (N.J. 1991).

In reviewing alleged misrepresentations on life insurance applications, courts distinguish between objective and subjective questions.  See, e.g., Mi Ja Jae v. Metro. Life Ins. Co., No. A2302-11T4, 2013 WL 535256, at *4 (N.J. Super. Ct. App. Div. Feb. 14, 2013) (citing Ledley, 651 A.2d 92).  "Objective questions call for information within the applicant's knowledge, such as whether the applicant has been examined or treated by a physician."  Ledley, 651 A.2d at 96 (internal citations and quotation marks omitted).  If the question is objective, even an innocent misrepresentation warrants recission.  Id. at 95.  In contrast, subjective questions inquire into the "applicant's state of mind.  They are concerned with more ambiguous issues, such as 'what is the state of the applicant's health.'"  Id.[7]  Courts are "more lenient" when reviewing misrepresentations made in response to a subjective question and consider whether the answer accurately reflects the applicant's state of mind even if otherwise inaccurate.  Mi Ja Jae, 2013 WL 535256, at *4.

---

[7] Examples of subjective questions include those where an "insurer asks an insured to indicate a belief about the status of his or her health" or if they are "aware of any circumstances which may result in a claim."  First Am. Title Ins v. Lawson, 827 A.2d 230, 237 (N.J. 2003).

Therefore, if a question is subjective, then the insurer must additionally establish the insured knew the answer was false. See id.; Formosa v. Equitable Life Assur. Soc. of U.S., 398 A.2d 1301, 1305 (N.J. App. Div. 1979).

Here, the annual income question was objective. Courts in this district routinely deem questions requesting annual income to be objective. See, e.g., Mitchell v. Banner Life Ins. Co., No. 08-5984, 2011 WL 5878378, at *5 (D.N.J. Nov. 22, 2011); Am. Gen. Life Ins. Co. v. Garcia, No. 07-3179, 2009 WL 2905372, at *3 (D.N.J. Sept. 10, 2009). Similarly, the Application here asked simply and directly for Bahjat's annual income. This question was included in a section of the Application inquiring into basic biographical information such as name, social security number, and occupation. See Application at Allstate/Bahjat_000043. The question was thus unambiguous and asked for information squarely within Bahjat's knowledge (i.e., how much she made a year).

Tawil makes several arguments in an attempt to recast the question on the Application as subjective. First, Tawil argues that "is impossible to ascertain the earnings of a new business with any definiteness." Tawil Motion at 11. Second, Tawil argues the question did not specify if it was inquiring about the upcoming or prior year of business. Id. Finally, Tawil argues the question does not specify if it was asking for sales revenue, EBIDTA, or net income. Id. at 12. None of these arguments are persuasive. The question called for specific, factual, information that was known to her as the owner: the businesses' annual income. Ultimately, a correct answer to Allstate's question did not depend on Bahjat's opinions or state of mind or her subjective opinion as to the likely success of the business. It did not seek sales revenue, net income, or EBITDA. The record does not contain evidence showing she based her income on factual sales information from the Smoke Shop that was available and known to her as of the date of application. Therefore,

it is irrelevant whether Bahjat acted in good faith in providing her aspirational "estimate" of her annual income.

Tawil argues that the policy cannot be voided because the insurance broker caused the misrepresentation by asking her to estimate her income. Under New Jersey law, an agent's conduct may prevent an insurer from voiding a policy based on material misrepresentation in some circumstances.[8] Specifically, an insurer may not rescind a policy based on a false answer that its agent caused to be written on the application when the insured provided truthful answers. Heake v. Atl. Cas. Ins. Co., 105 A.2d 526, 530 (N.J. 1954). Thus, if Bahjat had disclosed to Trabucco that annual income from the Tawil Smoke Shop was approximately $2,000 and Trabucco nevertheless filled in her annual income as $180,000, then Allstate would be unable to invoke the answer's objective falsity as a basis to rescind. However, that is not the case here. According to Tawil's version of events, Trabucco recorded $180,000 (or about $500 a day) as the annual income based on information the family provided to Trabucco at the meeting. See Tawil Tr. at 31:25-32:23. Tawil testified:

> He asked me how much I make a year and I told him this is a new business. Sometimes we make $500, sometimes $700, sometimes $1,000. He told me I have to come up with specific amount for my income. I told him I can't give you a number. Sometimes even the number I gave, $500, sometimes its $300, sometimes its $200.

Id. Similarly, Tawil's son testified that "we told him that we—the estimate he figured out, was 500 from the numbers that I'm giving him, and the numbers Amal and Dad were giving him, but we made sure to tell him it was not a hundred precent." Amin. Tr. at 80:15-17. Thus, Tawil and Bahjat indisputably told Trabucco that the daily income from the store ranged from $200 to $1,000

---

[8] Tawil argues that recission is improper because the misrepresentation is the product of its agent, Trabucco. Allstate and Trabucco both argue that Trabucco is not Allstate's agent because he is an independent contractor. Because the Court finds that recission is proper regardless of this agency-relationship, the Court does not reach this issue.

a day. However, even the low end of this range does not square with Bahjat's actual annual income, which after expenses was zero. In this case, a truthful answer to the question of Bahjat's "approximate annual income" would have been around zero to $2,000 a year.

Therefore, the fact that Trabucco asked Bahjat to provide her approximate income does not preclude Allstate from establishing equitable fraud. Here, the undisputed facts show that the misrepresentation in the Application was material and is the direct result of the insured giving untruthful information to the insurance producer. Accordingly, Allstate has established that it is entitled to recission. The Court will grant summary judgment in its favor.[9]

### B. Counterclaims

Tawil asserted four counterclaims against Allstate: breach of contract ("Counterclaim I"); unjust enrichment ("Counterclaim III"); equitable estoppel ("Counterclaim V"); and breach of the implied covenant of good faith and fair dealing ("Counterclaim VI"). Allstate argues it is entitled to summary judgment in its favor on all counterclaims. The Court agrees.

First, Allstate is entitled to summary judgment on Counterclaims I and III because the policy is void under the doctrine of equitable fraud. Because the policy is void, Allstate did not breach its contract with Bahjat by denying payment of the life insurance benefit. Similarly, because the policy is void, Allstate is obligated to return the premium paid, which negates Tawil's claim that Allstate was unjustly enriched by the policy.

Second, to prevail on a claim for equitable estoppel, the insured must establish that (1) the insurer misrepresented the extent of coverage and (2) reasonable reliance by the insured thereon to his detriment. <u>Martinez v. John Hancock Mut. Life Ins. Co.</u>, 367 A.2d 904, 911 (N.J. App. Div. 1976); <u>see also</u> <u>Harr v. Allstate Ins. Co.</u>, 54 N.J. 287, 306, 255 A.2d 208, 219 (1969) (explaining

---

[9] The Court finds that Allstate has established equitable fraud and the policy is rescindable. Therefore, the Court does not need to reach a decision on the separate grounds for declaratory judgment alternatively sought in Count II.

insurer is estopped from denying coverage when the insurer "misrepresents, even though innocently, the coverage of an insurance contract, or the exclusions therefrom" and the insured relied thereon). Here, the record is devoid of evidence that Allstate or Trabucco misrepresented the extent, nature, or facts of coverage. Allstate or Trabucco did not misrepresent the nature of the coverage. The Policy explicitly required the insured to provide truthful information in response to the questions posed and allowed an insurer to inquire into the truth of that information within two years of issuance. Pl. SOMF ¶¶ 13-17; see also Application at Allstate/Bahjat_000045. Moreover, there is no evidence that Bahjat relied on any misrepresentation from Allstate or Trabucco in the insurance application process. Trabucco asked for an approximation of Bahjat's annual income, but that is not the reason her coverage was void. The policy was void because Bahjat herself misrepresented her approximate annual income. Therefore, Tawil cannot establish a claim for equitable estoppel.

Finally, to prevail on a claim for breach of bad faith in the insurance context, a plaintiff "must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Pickett v. Lloyd's, 621 A.2d 445, 453 (N.J. 1993). A plaintiff cannot prevail on a bad faith claim where the coverage is "fairly debatable." Id. Here, the Court has already determined the policy was void, which itself establishes the coverage was debatable. See id. at 454 (explaining a claimant that cannot establish it is entitled to coverage on summary judgment cannot establish a claim for bad faith in refusal to pay). Moreover, the facts illustrate that Allstate's claim denial was based on its clear underwriting guidelines paired with the undisputed tax records that establish Bahjat was

ineligible for a $1 million life insurance policy.  Pl. SOMF ¶¶ 44-45.  Therefore, Tawil cannot establish a claim for breach of bad faith on the record.

### C.  Claims Against Trabucco

Tawil and Trabucco both move for summary judgment on the negligence claim brought against Trabucco.  The Court finds that Trabucco is entitled to summary judgment in his favor because the record contains no evidence that the policy was void because Trabucco breached any duty.

Under New Jersey law, any claim of negligence requires the plaintiff to prove that the defendant breached a duty of care owed to plaintiff and that plaintiff suffered damages proximately caused by that breach.  <u>Highlands Ins. Co. v. Hobbs Grp., LLC.</u>, 373 F.3d 347, 351 (3d Cir. 2004). In the insurance context, "[i]t is conventional wisdom that an insurance broker must act with reasonable skill and diligence in performing the services of a broker with respect to its insured." <u>Id.</u> (internal citations and quotations omitted).  Therefore, if a broker "neglects to procure the insurance or if the policy is void or materially deficient . . . because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby."  <u>Aden v. Fortsh</u>, 776 A.2d 792, 801 (N.J. 2001).

Here, there is no evidence that the policy was void because Trabucco breached any duty he owed to the insured.  Trabucco procured the policy that Bahjat requested him to purchase, in accordance with the information provided by her on the application.  Specifically, after filling in the application together, Trabucco reviewed the questions and answers with Bahjat—including her "approximated" income—and asked her to confirm the application's accuracy.  <u>See</u> 3d Def. SOMF

¶¶ 21-22. Once the application was completed, Trabucco submitted it to Allstate for approval and issuance.

Tawil argues that Trabucco breached his duty of care by "posing a question that was substantially different than what was found in the application" and thus rendering the policy void and rescindable. Tawil Motion at 26. However, Tawil's claim was not denied because Trabucco requested Bahjat's approximate income. Rather, Tawil's claim was denied because Bahjat provided Trabucco false information related to her income. Trabucco testified that it is his regular practice to ask life insurance applicants for an approximation of their annual income. Specifically, Trabucco explained that his typical practice with life insurance clients is to ask for approximate annual income because "a lot of [his] clients get bonuses and it's hard to calculate things, with income, base salary, and bonuses." Trabucco Tr. at 91:19-21. Indeed, the undisputed facts establish that an approximate annual income within a wide range would have been sufficient to qualify Bahjat for the coverage she sought. 3d Def. SOMF ¶ 23; Def. Resp. to 3d Def SOMF.

Trabucco followed his standard practice and asked Bahjat to approximate her annual income. Tawil's own testimony confirms the couple provided false approximate income figures to Trabucco, which ultimately caused the policy to be void. See Indus. Valley Bank & Tr. Co. v. Dilks Agency, 751 F.2d 637, 640 (3d Cir. 1985) ("Although an insurance broker owes a duty of care to its customer, that duty is not unaffected by the conduct of the customer itself."). Trabucco dutifully recorded the information his client provided to him in the application and reviewed the information with his client. He had no reason to suspect this figure was false and he had no duty to investigate or corroborate the truth of the figure provided.[10] See Trabucco Tr. at 60:25-61:16.

---

[10] Trabucco argues that "[t]here is no duty owed by an insurance producer in New Jersey to "ferret out" false information, or verify the information provided by a prospective insured on the application for coverage." Trabucco Motion at 10. In his opposition, Tawil does not dispute this point. Rather, Tawil broadly asserts that whether Trabucco breached his standard of care is a fact question for a jury. This argument is misplaced for a couple reasons. First,

Therefore, the policy was ultimately void and rescindable because of Bahjat's actions, not because of Trabucco's alleged failure to exercise the requisite skill or diligence necessary to procure insurance.

On the instant record, a reasonable jury could not find that Trabucco was negligent in his attempt to procure life insurance for Bahjat. Therefore, summary judgment in Trabucco's favor is appropriate.

## IV. CONCLUSION

For the reasons contained herein, Allstate's Motion for Summary Judgment is **GRANTED**, Trabucco's Motion for Summary Judgment is **GRANTED,** and Tawil's Motion for Summary Judgment is **DENIED**. An appropriate order accompanies this Opinion.

**Dated**: June 3, 2021

/s Madeline Cox Arleo_____
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

Tawil's opposition ignores the fact that Tawil himself moved for summary judgment on his negligence claim against Trabucco. Second, if Trabucco did not have a duty to investigate the information provided by the insured, then there is no issue of fact as to whether or not he breached that duty.